**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01341-CMA-STV

WALDO MACKEY,

      Plaintiff,

v.

BRIDGETTE WATSON, and
SUSAN PRIETO,

      Defendants.

---

**ORDER ADOPTING IN PART AND REJECTING IN PART THE OCTOBER 25, 2017
RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court upon the October 25, 2017, Recommendation by

United States Magistrate Judge Scott T. Varholak that Defendants' Motion to Dismiss

(Doc. # 30) be granted in part and denied in part. (Doc. # 43.) Plaintiff and Defendants

timely objected to different parts of the Recommendation. (Doc. ## 46, 47.) For the

reasons described herein, Defendants' Objection (Doc. # 47) is overruled, and the

Recommendation is adopted in part and rejected in part, with the end result being that

Defendants' Motion to Dismiss is denied.

## I.   <u>BACKGROUND</u>

Plaintiff Waldo Mackey is incarcerated at the Fremont Correctional Facility

("FCF") in the custody of the Colorado Department of Corrections ("the Department").

(Doc. # 1.)  At all relevant times, Defendant Sergeant Bridgett Watson and Defendant Lieutenant Susan Prieto (together, "Defendants") were correctional officers at FCF.  (*Id.*)

## A. FACTS RELEVANT TO CLAIMS FOUR AND FIVE

The only claims at issue, Claims Four and Five of Plaintiff's Complaint, arise out of a verbal altercation between Plaintiff's cellmate and a correctional officer during the week of February 12, 2017.[1]  (Doc. # 1 at 16.)  On February 17, 2017, another correctional officer searched Plaintiff's and his cellmate's cell.  (*Id.*)  Plaintiff told the searching officer that a correctional officer had "shook down" the cell just a few days prior, and the officer explained that Plaintiff's cellmate had been disrespectful during the verbal altercation and finished searching Plaintiff's cell.  (*Id.*)

The following morning, February 18, 2017, Defendant Watson went to Plaintiff's and his cellmate's cell and stated that she "had a call to shakedown the cell."  (*Id.*)  Plaintiff explained to Defendant Watson that he and his cellmate did not have any dangerous items in their cell because two correctional officers had already searched their cell in the preceding days.  (*Id.*)  Plaintiff complained to Defendant Watson that "this was harassment" and that he had nothing to do with his cellmate's altercation.  (*Id.*)  Defendant Watson told Plaintiff to "get another cellie [sic]."  (*Id.*)

Plaintiff went to FCF's "control" room and requested the shift commander because Plaintiff believed "[he] was being harassed for something [he] knew nothing about."  (Id.)  Plaintiff filed a step one grievance against Defendant Watson for

---

[1] For purposes of reviewing the motion to dismiss, Plaintiff's factual allegations in his Complaint are accepted as true and viewed in the light favorable to him, the nonmoving party. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

"harassment and retaliation." (*Id.*; Doc. # 1-2 at 42.) Plaintiff first contends in Claim Four that "[b]ecause [he] complained," Defendant Watson confiscated Plaintiff's property, including his prescription eyeglasses and his socks. (Doc. # 1 at 16–17.) Defendant Watson identified these items as contraband. (*Id.*) Plaintiff disputes this characterization. (*Id.* at 16–19.)

After his cell was searched, Plaintiff voluntarily went to segregation "rather than have a confrontation" with Defendant Watson "because he felt like it was the only solution to the problem." (Doc. # 1 at 21.) Plaintiff stayed in segregation for four days. (*Id*.)

One week later, Plaintiff filed a DOC Employee/Contract Worker Conduct Complaint against Defendant Watson. (Doc. # 1-2 at 41.) Plaintiff filed step two and step three grievances in March and April, 2017. (*Id.* at 43, 44.) The grievance officer denied Plaintiff's requests for relief because the officer found that "[t]he shakedown was conducted in accordance with policy." (*Id.* at 40.)

In Claim Four, Plaintiff asserts that Defendant Watson retaliated against him for filing grievances in two other ways. Second, Plaintiff alleges that Defendant Watson fired Plaintiff from his job as an Offender Care Aid ("OCA") worker, which he had been in for ten years. (Doc. # 1 at 20.) Plaintiff was placed instead in the kitchen. (*Id.*) DOC headquarters reinstated Plaintiff's OCA position after Plaintiff filed a complaint. (*Id.*) Upon his reinstatement, FCF paid Plaintiff "at a lower rate of pay . . . all for complaining." (*Id.*)

Third, Plaintiff alleges that Defendant Wilson filed disciplinary charges against him in retaliation for Plaintiff's grievances.  (*Id*. at 21.)  On March 7, 2017, more than two weeks after the cell search on February 18, 2017, at issue, Defendant Watson filed a formal charge against Plaintiff for making threats during the cell search.  (Doc. # 1-2 at 47.)

A hearing on the charge was conducted on March 9, 2017, by Defendant Prieto, the hearing officer.  (Doc. # 1 at 21.)  Defendant Watson testified that Plaintiff threatened her "when [Plaintiff] continued to enter the cell multiple times during the shake down and aggressively yell[ed] profanities and defamatory statements."  (Doc. # 1-2 at 48.)  Plaintiff pled not guilty and argued that Defendant Watson was lying. (Doc. # 1 at 22.)  Plaintiff asked Defendant Prieto for the videotape of the incident.  (*Id.*) Deference Prieto responded that the video had been taped over and that Plaintiff should have requested the video within three days of the incident.  (*Id.*)  Plaintiff also asked to call his cellmate and another offender as witnesses on his behalf.  (*Id.*; Doc. # 1-2 at 48.)  Defendant Prieto did not allow those witnesses to testify because testimony about the number of cell inspections was "not relevant to the charge."  (Doc. # 1-2 at 48.) According to Plaintiff, Defendant Prieto denied him due process "by not allowing evidence and witnesses and/or showing prejudice by accepting vague testimony of [Defendant] Watson over Plaintiff's."  (Doc. # 1 at 22.)  These allegations form the basis of Claim Five.  On March 10, 2017, Defendant Prieto found Plaintiff guilty of making threats.  (Doc. # 1-2 at 48.)   Defendant Prieto imposed a sentence of three days in

punitive segregation but gave Plaintiff credit for time already served in segregation prior to the hearing. (*Id.*)

## B. PROCEDURAL HISTORY

Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 on June 2, 2017. (*Id.*) Proceeding *pro se*, Plaintiff alleged five causes of action against seven defendants, all of whom were Department employees. (*Id.*) Senior United States District Court Judge Lewis T. Babcock conducted an initial review of Plaintiff's pleading pursuant to D.C.Colo.L.CivR 8.1(b)(3) to determine if any part of Plaintiff's complaint warranted summary dismissal. *See* (Doc. # 6.) On June 21, 2017, Senior Judge Babcock dismissed Claims One, Two, and Three of Plaintiff's complaint as frivolous, dismissed five defendants from the action entirely, and drew Claims Four and Five to a presiding judge. (*Id.* at 9.)

Accordingly, only Claims Four and Five against Defendants Watson and Prieto are before the Court. In Claim Four, Plaintiff alleges that Defendant Watson retaliated against him and violated his First Amendment rights by searching his cell, confiscating his prescription glasses and socks, removing him from his job, and filing a false disciplinary report. (Doc. # 1 at 16–20; Doc. # 6 at 3.) In Claim Five, Plaintiff alleges that Defendant Prieto, the presiding officer at his March 9, 2017 disciplinary hearing, denied Plaintiff due process by refusing to consider certain evidence and witnesses. (Doc. # 1 at 21–22; Doc. # 6 at 4.)

Defendants filed the Motion to Dismiss on August 21, 2017. (Doc. # 30.) The Court referred Defendants' Motion to Dismiss to Magistrate Judge Varholak on August

22, 2017.  (Doc. # 32.)  Defendants argue that all remaining claims should be dismissed because: (1) Plaintiff failed to state a First Amendment claim for retaliation pursuant to FRCP (12)(b)(6); (2) Plaintiff failed to state a due process claim with respect to his disciplinary proceeding because *Heck v. Humphrey*, 512 U.S. 477 (1994), bars such a challenge; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff failed to assert a valid claim for monetary damages.  (Doc. # 30 at 4–13.)

## C.    The Magistrate Judge's Recommendation

As recounted above, Defendants filed the Motion to Dismiss Claims Four and Five, the only remaining claims.  (*Id*.)  Magistrate Judge Varholak first recommended that Defendants' Motion to Dismiss be denied as to Claim Four, the retaliation claim against Defendant Watson.  (Doc. # 43 at 18.)  Magistrate Judge Varholak determined that Plaintiff adequately pled all three elements of a retaliation claim and rejected Defendant Watson's argument otherwise.  (*Id*. at 7–10.)  Magistrate Judge Varholak also disagreed with Defendant Watson's argument that she is entitled to qualified immunity on this claim.  (*Id*. at 7.)  Having already determined that Plaintiff adequately pled that Defendant Watson "violated a clearly established right," Magistrate Judge Varholak concluded that "the constitutional right was clearly established at the time of the misconduct."  (*Id*. at 10–11.)  Accordingly, Magistrate Judge Varholak recommended that Claim Four against Defendant Watson be allowed to proceed.  (*Id*. at 18.)

Second, Magistrate Judge Varholak recommended that Defendants' Motion to Dismiss be granted as to Claim Five, the due process claim against Defendant Prieto, and that Defendant Prieto therefore be dismissed from the case.  (*Id*. at 18.)  Magistrate

Judge Varholak addressed Defendant Prieto's argument that Claim Five is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. # 43 at 12–14.) After reviewing case law concerning the application of *Heck* where a habeas remedy is unavailable, Magistrate Judge Varholak decided that he "need not decide the issue [of *Heck*'s applicability] because even if Plaintiff's claims were allowed to proceed, Plaintiff has failed to state a due process claim, and as a result, Defendant Prieto is entitled to qualified immunity on Count Five." (*Id.* at 14.) Magistrate Judge Varholak explained that Plaintiff failed to adequately allege a due process claim because Plaintiff hadn't established a protected liberty interest and because Plaintiff hadn't spent any additional time in punitive segregation as a result of Defendant Prieto's hearing. (*Id.* at 16–17.) Magistrate Judge Varholak therefore recommended that the Court dismiss Defendant Prieto's Motion to Dismiss Claim Five against Defendant Prieto. (*Id.* at 17.)

Magistrate Judge Varholak recommended deferring the question of punitive damages until after discovery, explaining that a subjective inquiry is necessary to determine whether punitive damages are available in this Section 1983 action. (*Id.* at 18.) No party objects to this part of the Recommendation.

Plaintiff responded to Defendants' Motion to Dismiss on August 18, 2017 (Doc. # 39), Defendants replied on October 3, 2017 (Doc. # 41), and Plaintiff filed a surreply on October 12, 2017 (Doc. # 42).

## II.  STANDARDS OF REVIEW

### A.    REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Fed. R. Civ. P. 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to."  An objection is properly made if it is both timely and specific.  *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir.1996).  In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

### B.    PRO SE PLAINTIFF

Plaintiff proceeds *pro se*.  The Court, therefore, reviews his pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.

1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  Nor does pro se status entitle a litigant to an application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## C.    FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall*, 935 F.2d at 1198.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 679–81.  Second, the Court

considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III. <u>ANALYSIS</u>

In keeping with its responsibility to first determine the scope of the objections lodged in response to the Recommendation, this Court has carefully reviewed the Recommendation, Plaintiff's objection, Defendants' objection, the underlying Motion to Dismiss and all relevant pleadings, and taken judicial notice of the file. No party objects to the portion of the Recommendation concerning punitive damages. *See generally* (Doc. ## 46, 47.) This Court—exercising its discretion—has conducted a thorough review of this portion and discerns no error in Magistrate Judge Varholak's recommendation that determination of punitive damages be deferred until the close of discovery. *See* (Doc. # 17–18).

Defendants disagree with Magistrate Judge Varholak's recommendation that the Court deny their Motion to Dismiss as to Claim Four and allow Claim Four to proceed against Defendant Watson.  (Doc. # 47.)  Plaintiff objects to Magistrate Judge Varholak's recommendation that the Court grant Defendant's Motion to Dismiss as to Claim Five and dismiss Defendant Prieto.  (Doc. # 46.)  The Court will proceed through each claim individually, conducting an appropriately framed *de novo* review of the Recommendation's legal conclusions in light of the arguments set forth in Plaintiff's objection, Defendants' objection, and all related filings.

## A.    CLAIM FOUR

In Claim Four, Plaintiff alleges that Defendant Watson retaliated against him, in violation of his First Amendment rights, after he filed grievances about Defendant Watson's search of his cell on February 18, 2017.  (Doc. # 1 at 16–20; Doc. # 6 at 3.) Defendants argue that pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff fails to state a claim for retaliation.  (Doc. # 30 at 4–8.)  Defendants also assert that Defendant Watson is entitled to qualified immunity on this claim.  (*Id*. at 9–11.)

### 1.  Legal Principles

"[A]ny form of official retaliation for exercising one's freedom of speech . . . constitutes an infringement of that freedom."  *Worrell v. Henry*, 219 F.2d 1197, 1212 (10th Cir. 2000) (internal quotation and citation omitted).  To show government retaliation against a plaintiff for exercising his or her First Amendment rights, the plaintiff must prove three elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a

person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Id.* (quotations omitted); *see also Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). At the second element, the standard for evaluating the "chilling effect of speech is objective, rather than subjective." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004). "[A] trivial or de minimus injury will not support a retaliatory prosecution claim." *Id.* at 955 (quoting *Poole v. Cty. of Otero*, 271 F.3d 955, 960 (10th Cir. 2001)). In regard to the third element, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990).

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation omitted). To defeat a claim of qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton*, 379 F.3d at 954; *see also Pearson*, 555 U.S. at 232. For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

2. <u>Application</u>

Plaintiff has adequately stated a claim for retaliation by sufficiently pleading all three elements. *See Worrell*, 219 F.2d at 1212. First, Plaintiff asserts that he was engaged in constitutionally protected activity. Plaintiff alleges that "because [he] complained" about Defendant Watson's harassment directly to Defendant Watson and to the shift commander, Defendant Watson "began to confiscate [his] property." (Doc. # 1 at 16–17.) Plaintiff also alleges that because he filed formal grievances against Defendant Watson, Defendant Watson "deliberately . . . show[ed] her power over [him]," resulting in Plaintiff being fired from his OCA job. (*Id.* at 20.) Filing administrative grievances is constitutionally protected conduct. *See Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (holding that prison officials cannot punish a plaintiff in retaliation for exercising his First Amendment rights by filing administrative grievances); *Leek v. Miller*, 698 F. App'x 922, 925 (10th Cir. 2017) ("Nor may prison officials retaliate against prisoners for filing administrative grievances."). Accordingly, Plaintiff has alleged facts that could plausibly satisfy the first element of a retaliation claim.

The Court is not persuaded by Defendant Watson's objection that Plaintiff was not engaged in constitutionally protected activity. *See* (Doc. # 47 at 6–9.) Defendant Watson's argument that Plaintiff did not have First Amendment rights "to make violent, explicit, or harassing statements" and to threaten prison officials is immaterial. *See* (*id.* at 6–8.) Any accusations about Plaintiff's explicit statements or threats to Defendant Watson are separate and apart from the undisputed fact that Plaintiff filed administrative grievances. The former have no bearing on the latter.

13

Second, Plaintiff has adequately pled the next element of a retaliation claim. Plaintiff alleges that Defendant Watson's actions "caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *See Worrell*, 219 F.2d at 1212. Specially, Plaintiff contends that Defendant Watson took prescription glasses and socks from Plaintiff's cell (Doc. # 1 at 16–18), had him terminated from his OCA job (*id*. at 20), and filed a false disciplinary charge against him (*id.* at 21). Presuming these allegations are true, Plaintiff has shown that Defendant Watson's actions caused him injuries that "would chill a person of ordinary firmness from continuing to engage in that activity." *See Worrell*, 219 F.2d at 1212.

Defendant Watson argues in her objection that she did not wrongfully take items from Plaintiff's cell; she states that she saw "several unauthorized items" in the cell and rightly confiscated contraband. (Doc. # 47 at 7.) As Magistrate Judge Varholak explained (Doc. # 43 at 9), the Court need not reach the dispute over whether Plaintiff's glasses and socks were contraband because Plaintiff also alleges that Defendant Watson had him terminated from his OCA job and filed a false disciplinary charge against him. These allegations alone sufficiently plead the second element of a retaliation claim. *See Milligan v. Archuleta*, 659 F.3d 1294, 1296 (10th Cir. 2011) (reversing the district court's order of dismissal as to a plaintiff's retaliation claim arising from the loss of his prison job). They are not trivial or de minimus. *See Eaton v. Meneley*, 379 F.3d at 955. Plaintiff has thus alleged facts to satisfy the second element of a retaliation claim.

Third, Plaintiff has adequately alleged that the final element of a retaliation claim by asserting that Defendant Watson's actions were "substantially motivated" by Plaintiff's exercise of his constitutionally protected right to file administrative grievances. *See Worrell*, 219 F.2d at 1212. Plaintiff alleges that Defendant Watson retaliated against him because he filed grievances. (Doc. # 1 at 16 ("Because I complained . . ."), 20 (". . . and all for complaining.")) Plaintiff also asserts that he was fired from his OCA position just after filing grievances, despite having been in that job for more than a decade. (*Id.* at 20.) The Tenth Circuit has repeatedly recognized that close temporal proximity between protected conduct and the ensuing disciplinary (or otherwise detrimental) action may show that the disciplinary action was substantially motivated by the exercise of a protected right. *See Lewis v. Clark*, 577 F. App'x 786, 800 (10th Cir. 2014); *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). Here, there is close temporal proximity between Plaintiff exercising his First Amendment right by filing grievances and his termination from his OCA position. Plaintiff therefore plausibly alleges the 'but for' causation required by the third element of a retaliation claim.

For these reasons, Plaintiff's allegations plausibly show all three elements of a retaliation claim. Cognizant of the Court's function on a Fed. R. Civ. P. 12(b)(6) motion, the Court therefore concludes Plaintiff has stated a claim for retaliation in violation of the First Amendment. The Court rejects Defendants' Fed. R. Civ. P. 12(b)(6) argument otherwise. *See* (Doc. # 30 at 4–8.)

Turning to Defendants' alternative argument that Defendant Watson is entitled to qualified immunity on Plaintiff's retaliation claim (Doc. # 30 at 9–11), the Court

concludes that Plaintiff has adequately alleged facts to plausibly overcome Defendant Watson's qualified immunity defense. First, Plaintiff has satisfactorily alleged that Defendant Watson's conduct—retaliation—violated Plaintiff's constitutional right to free speech, as the Court just explained. *See Eaton*, 379 F.3d at 954.

Second, the law governing retaliation by prison officials against offenders has long been clearly established. *See id*. The Tenth Circuit held twenty-five years ago that prison officials may not retaliate when an offender files a grievance. *Williams*, 926 F.2d at 998; *see also Leek*, 698 F. App'x 922 at 925. More specifically, the Tenth Circuit held that "prison officials cannot punish [a] plaintiff for exercising his [F]irst [A]mendment rights by denying him certain job assignments or transferring him from one job to another." *Id*. Such decisions gave Defendant Watson "fair notice that her conduct was unlawful." *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Defendant Watson has not cited, nor could did the Court find, existing law to the contrary. *See* (Doc. # 30 at 11.) Therefore, the Court concludes that Plaintiff, having alleged that Defendant Watson's conduct violated his First Amendment rights and that the pertinent law was clearly established at the time of the alleged retaliation, can plausibly defeat Defendant Watson's claim of qualified immunity.

The Court accordingly affirms and adopts Magistrate Judge Varholak's recommendation that Defendants' Motion to Dismiss as to Claim Four be denied. *See* (Doc. # 43 at 11.) Plaintiff's retaliation claim against Defendant Watson (Claim Four) may proceed.

**B.      CLAIM FIVE**

In Claim Five, Plaintiff alleges that Defendant Prieto, the presiding officer at his March 9, 2017 disciplinary hearing, denied Plaintiff procedural due process by refusing to consider certain evidence and witnesses.  (Doc. # 1 at 21–22; Doc. # 6 at 4.)  Plaintiff specifically contends that Defendant Prieto informed him that any video recording had been "taped over" and that Defendant Prieto "would not allow [his] witnesses, stating they were irrelevant to the charge even though [his claim] was retaliation and anything done in retaliation was illegal."  (Doc. # 1 at 22.)  Defendants move to dismiss Plaintiff's claim, asserting that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Plaintiff's claim. (Doc. # 30 at 8–9.)  Defendants also assert that Defendant Prieto is entitled to qualified immunity on this claim.  (*Id.* at 9–10.)

1. Legal Principles

In *Heck v. Humphrey*, the Supreme Court held that a prisoner's claim for damages under Section 1983 is "not cognizable" if "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless that conviction or sentence was previously invalidated.  512 U.S. at 486–87.  The Supreme Court expanded this rule to reach convictions in prison disciplinary proceedings that impact the prisoner's conviction or the duration of his sentence.  *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (per curiam) (holding that the plaintiff's Section 1983 claim alleging procedural due process violations during a prison disciplinary hearing was not cognizable where the procedural defects would, if true, "necessarily imply the invalidity

of the punishment imposed"—specifically, the "deprivation of 30 days' good-time credit he had previously earned towards his release.")

However, the Supreme Court later clarified that *Heck*'s bar is "not . . . implicated by a prisoner's challenge that threatens no consequence for his conviction or the duration of his sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). The Supreme Court explicitly assumed that "the incarceration that matters under *Heck* is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for infraction of prison rules." *Id.* at 751 n.1. Because "no good-time credits were eliminated by the prehearing action [the plaintiff in *Muhammad*] called in question," the plaintiff's Section 1983 challenge to the action "could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754–55. Thus, "*Heck*'s favorable termination requirement was inapplicable." *Id.* at 755.

The Tenth Circuit has interpreted and applied *Heck* and its progeny in a number of cases. For example, in *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007), the Tenth Circuit explained that "[t]he starting point for the application of *Heck* . . . is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *See also Harrison v. Morton*, 490 F. App'x 988, 992 (10th Cir. 2012); *Miller v. Edminsten*, 161 F. App'x 787, 789 (10th Cir. 2006).

Turning to Defendants' second argument—that Defendant Prieto is entitled to qualified immunity (Doc. # 30 at 9–10)—the Court reiterates that to defeat a claim of

qualified immunity, a plaintiff must show: "(1) that the defendant's conduct violated a constitutional or statutory right, and (2) that the law governing the conduct was clearly established at the time of the alleged violation." *Eaton*, 379 F.3d at 954; *see also Pearson*, 555 U.S. at 232.

  2. Application

  a. *Qualified Immunity*[2]

       Plaintiff plausibly shows that Defendant Prieto's conduct violated his constitutional rights, satisfying the first requirement to defeat a qualified immunity claim. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 2701, 2705 (1972). A protected liberty interest may arise in one of two ways in the prison context. First, a protected liberty interest may arise when the state's action "will inevitably affect the duration of [the imprisoned plaintiff's] sentence." *See Sandin v. Conner*, 515 U.S. 472, 487 (1995); *see also Wolff v. McDonnell*, 418 U.S. 539, 557–58 (1974). Here, Plaintiff does not have a liberty interest under this first scenario because, as the Court explained, Defendant Prieto's disciplinary sanction—three days of punitive segregation, with credit for time voluntarily served in segregation before the hearing (Doc. # 1-2 at 48)—did not "inevitably affect the duration" of Plaintiff's sentence.

---

[2] The Court addresses Defendant Prieto's qualified immunity defense first because if Defendant Prieto is entitled to qualified immunity, the Court need not reach Defendant Prieto's argument that *Heck* bars Plaintiff's due process claim.

Second, a protected liberty interest may arise when the state's action "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005). In the Tenth Circuit, relevant factors to this inquiry "might include whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . .; and (4) the placement is indeterminate." *Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007).

The Court concludes that the alleged circumstances surrounding Plaintiff's disciplinary hearing and Defendant Prieto's sanction are extreme, *see Estate of DiMarco*, 473 F.3d at 1342, and (hopefully) atypical, *see Sandin*, 515 U.S. at 484. Plaintiff asked Defendant Prieto for videotape of the incident at his disciplinary hearing. (Doc. # 1 at 22.) Defendant Prieto denied his request and stated that the video was taped over and that Plaintiff should have asked for it within three days of the cell search. (*Id.*) However, Defendant didn't file a charge against Plaintiff for more than two weeks after the cell search. *See* (Doc. # 1-2 at 47.) In the three days immediately after the cell search, Plaintiff therefore had no reason to request the videotape; he was not yet facing any charges. Defendant Prieto also denied Plaintiff's request to have two other offenders, including Plaintiff's cellmate, testify on his behalf. (*Id.* at 48.) Defendant Prieto's Disposition of Charge Form states that she denied their testimony because she believed testimony about "the number of shake downs" was "not relevant to charge."

*See* (*id.*)  The Court fails to see how the cellmate's testimony in particular was not relevant to the topics at issue in the hearing.  As a result of Defendant Prieto's handling of the hearing, Plaintiff was left with "no defense other than his own testimony."  (*Id.*) This weighs in favor of finding that the conditions of Plaintiff's punishment were extreme and that Plaintiff thus has an enforceable liberty interest.

The Court is not persuaded otherwise by Magistrate Judge Varholak's and Defendants' focuses on the brief, three-day sanction Defendant Prieto imposed on Plaintiff.  *See* (Doc. # 43 at 15–17; Doc. # 48 at 7–8.)  Cases in which courts held that inmates did not have protected liberty interests from being sentenced to punitive segregation are distinguishable.  *See, e.g., Sandin*, 515 U.S. at 475–76 (holding that an inmate did not have a protected liberty interest when punished with 30 days in a segregated unit); *Meek v. Jordan*, 534 F. App'x 762, 765 (10th Cir. 2013) (holding that an inmate punished with 60 days in segregation did not have a protected liberty interest).  Such cases focused **only** on the length of the sanctions; these cases did not involve additional allegations about separate procedural defects in the disciplinary hearings.  *See, e.g., Gee*, 627 F.3d at 1195 (10th Cir. 2010) ("[Inmate] **pleaded no facts** to support a claim of atypical . . . deprivation" (emphasis added)); *James v. Argeys*, No. 14-cv-00983-CBS, 2015 WL 881691, at *8 (D. Colo. Feb. 26, 2015) ("Placement for limited duration, **standing alone**, does not create a cognizable liberty interest" (emphasis added.))  By contrast, in this case, Plaintiff has pleaded additional facts about the denial of due process in his hearing.

The Court is also not persuaded by Magistrate Judge Varholak's and Defendants' alternative explanation that Plaintiff fails to plausibly plead a due process claim because "he chose to go to segregation on his own accord" immediately after the cell search and then was credited by Defendant Prieto for time served there. *See* (Doc. # 43 at 17; Doc. # 48 at 8.) Plaintiff alleges that "[a]fter [he] realized [the shift commander] would not intervene, so rather than have a confrontation, [he] went to segregation because he felt like it was the only solution to the problem."[3] (Doc. # 1 at 21.) Construing this allegation liberally, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), the Court understands that Plaintiff's decision to go to a segregated unit on February 18, 2017, may not have been as voluntary as Magistrate Judge Varholak and Defendants suggest. If Plaintiff was faced with the choice of either returning to Defendant Watson's alleged harassment and a "confrontation" with her or going to a segregated unit, Plaintiff's decision to avoid a confrontation should not be held against him.

For these reasons, the Court concludes that Plaintiff has pled sufficient facts to make it plausible that he suffered an "atypical and significant" hardship and has a protected liberty interest. *See Sandin*, 515 U.S. at 484. Therefore, Plaintiff has pled allegations that plausibly show that Defendant Prieto's conduct violated his constitutional rights. Plaintiff satisfies the first requirement to defeat a qualified immunity claim.

---

[3] Elsewhere, Plaintiff alleges that "he went to control to see the shift commander who sent him directly to segregation." (Doc. # 39 at 2.)

Second, the Court concludes that the law on procedural due process in prison disciplinary hearings was clearly established at the time of Defendant Prieto's alleged misconduct. *See Pearson*, 555 U.S. at 232. It has long been recognized that "[p]risoners may . . . claim the protections of the due process clause. They may not be deprived of life, liberty, or property without due process of law." *Wolff*, 418 U.S. at 556. It has also long been recognized that "some kind of hearing is required at some time" before a prisoner is deprived of his liberty interests. (*Id*. at 557–58.) The question then becomes, "How much process is due at the hearing?" Because the requirements of due process are "flexible and cal[l] for such procedural protections as the particular situation demands," *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972), the Supreme Court "generally [has] declined to establish rigid rules and instead [has] embraced a framework to evaluate the sufficiency of particular procedures," *Wilkinson*, 545 U.S. at 224. The framework established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), requires consideration of three distinct factors.[4] *Wilkinson*, 545 U.S. at 224–35. The Supreme Court applied the *Mathews* framework to a number of prison disciplinary hearings, *see, e.g., id*. at 225–30; and it is clearly established that a prisoner is entitled to—at bare minimum—a meaningful opportunity to be heard. Relevant here, in *Wolff*, 418 U.S. at 566, the Supreme Court held that an "inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense."

---

[4] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

Accordingly, "the law governing [Defendant Prieto's] conduct was clearly established at the time of the alleged violation." *See Eaton*, 379 F.3d at 954; *see also Pearson*, 555 U.S. at 232.

Defendant Prieto is not entitled to qualified immunity on Claim Five. The Court in part rejects the Recommendation, to the extent that Magistrate Judge Varholak recommended otherwise. (Doc. # 43 at 14–17.)

*b.* Heck*'s bar*

The next question the Court must answer is whether *Heck v. Humphrey*, 512 U.S. 477 (1994), applies when a habeas remedy is unavailable to a prisoner because disciplinary sanctions had no effect on the length of his confinement. The Court has not found any case law from this jurisdiction that directly answers this question. Nonetheless, after reviewing relevant authority, the Court disagrees with Defendants' argument that *Heck* precludes Claim Five and concludes that *Heck* does not bar Plaintiff's Section 1983 claim against Defendant Prieto.

*Heck*, 520 U.S. at 486, and *Balisok*, 520 U.S. at 648, stand for the proposition that an inmate's claim for damages is not cognizable under Section 1982 if judgment in his favor would imply the invalidity of a prison disciplinary conviction or the duration of his sentence. The Supreme Court later explained that in *Heck* and *Balisok*, "conditioning the right to bring a [Section] 1983 action on a favorable result in state litigation or federal habeas **served the practical objective of preserving limitations on the availability of habeas remedies**. Federal petitions for habeas corpus may be

granted only after other avenues of relief have been exhausted." *Muhammad*, 540 U.S. at 751 (emphasis added.)

However, in *Muhammad*, the inmate's Section 1983 action did not challenge an underlying prison disciplinary conviction or the subsequent sanction. *Id.* at 753. The "only relief sought was $10,000 in compensatory and punitive damages." *Id.* Additionally, the sanction the plaintiff received did not affect the duration on his sentence; "no good-time credits were eliminated by the prehearing action [the plaintiff] called into action." *Id.* at 754. The Supreme Court thus reasoned:

> [The plaintiff's] § 1983 suit challenging this action could not therefore be construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence. That is, he raised **no claim on which habeas relief could have been granted** on any recognized theory, with the consequence that ***Heck's* favorable termination requirement was inapplicable**.

*Id.* at 754–55 (emphasis added.) The Supreme Court held that "[t]here is no need to preserve the habeas exhaustion rule and no impediment under *Heck*" when the prisoner's challenge "threatens no consequence for his conviction or the duration of his sentence." *Id.* at 751–52.

The Court's analysis of the instant matter begins with *Muhammad*. To be sure, the two cases are not factually identical. Here, unlike in *Muhammad*, Plaintiff challenges the validity of the prison disciplinary conviction itself. The Court agrees with Magistrate Judge Varholak that *Muhammad* did not decide whether a challenge to the validity of a disciplinary conviction would be barred by *Heck*. *See* (Doc. # 43 at 13.) In *Butler*, 482 F.3d at 1279, the Tenth Circuit held that the conviction that matters under *Heck* and *Muhammad* is the conviction "tied to the conduct alleged in the [Section] 1983

action." *Harrison*, 490 F. App'x at 992.  And here, Plaintiff challenges Defendant

Prieto's conduct at his disciplinary hearing and the subsequent conviction, not his initial

criminal conviction.  So while Plaintiff's Section 1983 claim does not threaten the

duration of his underlying sentence, it does threaten the validity of his disciplinary

conviction for threat-making.  *Muhammad* would presumably not bar the application of

*Heck* to Plaintiff's Section 1983 claim, Claim Five.  *See Harrison*, 490 F. App'x at 992

(stating in dicta that it "would appear" *Muhammad* does not preclude *Heck*'s application

where the plaintiff's Section 1983 challenge was to his prison disciplinary conviction.)

        The nature of Plaintiff's disciplinary sanction—three days in punitive segregation,

but with credit for time already served there—"further complicates the issue," as

Magistrate Judge Varholak described.  (Doc. # 43 at 14.)  Because Plaintiff's

punishment did not affect the duration of his sentence, it is unlikely that Plaintiff would

be able to file a habeas petition challenging his disciplinary hearing and conviction.  In

the Tenth Circuit, a habeas claim pursuant to 28 U.S.C. § 2241 is available only to

challenge "an action affecting the fact or duration of the petitioner's custody," such as

the deprivation of a prisoner's earned credits.  *McIntosh v. U.S. Parole Comm'n*, 115

F.3d 809, 812 (10th Cir. 1997).  Plaintiff's disciplinary conviction does not qualify

because it did not affect "the fact or duration" of his imprisonment.

        *Muhammad* explicitly left open the possibility that the *Heck* bar does **not** apply in

situations where habeas is unavailable.  : "[The] unavailability of habeas . . . for other

reasons [than those in *Muhammad*, where the plaintiff did not challenge his disciplinary

conviction or sanction] may also dispense with the *Heck* requirement."  540 U.S. at

751–52 n.2.  The Court, thus, returns to the purpose behind the *Heck* bar.  "The purpose behind *Heck* is to prevent litigants from using a [Section] 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions."  *Butler*, 482 F.3d at 1279.  Where habeas is unavailable, the purpose behind *Heck* is not implicated because there is no danger of a plaintiff seeking to avoid the pleading requirements of habeas.   That is certainly true in the instant matter.  There is no danger Plaintiff seeks to avoid the pleading requirements of habeas; habeas is not available to him.

For these reasons, the Court rejects Defendants' assertion that *Heck* bars Plaintiff's Claim Five against Defendant Prieto and concludes, as a matter of first impression, that *Heck*'s requirement does not apply where habeas is not an option.  The Court accordingly rejects Magistrate Judge Varholak's recommendation that Defendants' Motion to Dismiss as to Claim Five be granted.  *See* (Doc. # 43 at 17.) Plaintiff's due process claim against Defendant Prieto survives Defendants' Motion to Dismiss.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is hereby ORDERED that the Recommendation of Magistrate Judge Varholak (Doc. # 43) is ADOPTED IN PART as an order of this Court and REJECTED IN PART. Accordingly, it is

FURTHER ORDERED that Defendants' Motion to Dismiss (Doc. # 30) is DENIED.

DATED:  December 5, 2017

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge