**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 17-cv-01341-CMA-STV

WALDO MACKEY,

      Plaintiff,

v.

BRIDGETTE WATSON, and
SUSAN PRIETO,

      Defendants.

---

**ORDER REVERSING MAGISTRATE JUDGE'S DENIAL OF DEFENDANTS' MOTION
TO AMEND ANSWER OR, ALTERNATIVELY, TO WITHDRAW INACCURATE
ADMISSION IN ANSWER**

---

This matter is before the Court on Defendants Bridgette Watson and Susan

Prieto's Objection (Doc. # 194) to United States Magistrate Judge Scott T. Varholak's

denial (Doc. # 179) of their Motion to Amend Answer or, Alternatively, to Withdraw

Inaccurate Admission in Answer (the "Motion to Amend Answer") (Doc. # 161).  For the

following reasons, the Court affirms Defendants' Objection (Doc. # 194) and overrules

the Magistrate Judge's denial (Doc. # 179) of their Motion to Amend Answer.

## I.     <u>BACKGROUND</u>

The Court detailed the relevant factual and procedural background of this case in

its December 5, 2017 Order Adopting in Part and Rejecting in Part the October 25, 2017

Recommendation of Magistrate Judge Varholak.  (Doc. # 51.)  Additional factual and

procedural background is detailed here only to the extent necessary to address Defendants' Objection.

Defendants' Objection concerns Claim Four, in which Plaintiff alleges that when he was incarcerated at the Fremont Correctional Facility in February 2017, Defendant Watson, a sergeant employed by the Colorado Department of Corrections at the facility, retaliated against him and violated his First Amendment rights after he complained about her search of his cell. (Doc. # 1 at 16–20; Doc. # 6 at 3.) In Paragraph 66 of his Complaint, filed June 2, 2017, Plaintiff describes the beginning of Defendant Watson's search as follows:

> 66. The next morning[,] Feb. 18, 2017, Sgt. Watson came to my cell **stating she 'had a call to shakedown the cell**', and I explained to her that [Correctional Officer] White shook the cell down last night and [Correctional Officer] Smith did it a few days before [Correctional Officer] Wood[,] and I had no dangerous items in my cell.

(Doc. # 1 at 16) (emphasis added). Plaintiff contends that he then "complained" to Defendant Watson about the search and later made a "step 1 grievance" and submitted an "Employee/Contract Worker Conduct Complaint for Harassment and Retaliation" about it. (*Id.* at 16.) He asserts that because he complained, Defendant Watson confiscated his prescription eyeglasses and socks during her search of his cell and later fired him from his job as an Offender Care Aid worker and filed disciplinary charges against him. (*Id.* at 16–17, 20–21.)

In Defendants' Answer, filed December 26, 2017, Defendant Watson addressed the allegations in Paragraph 66 of the Complaint:

> 15. With respect to the allegations set forth in paragraph 66 of the Complaint, **Defendant Watson admits she had a call to search Plaintiff's**

**cell** on February 18, 2017. Defendant Watson further admits that Plaintiff objected to the search but is without sufficient information and knowledge to form a belief as to the veracity of the remaining allegations set forth in said paragraph and, as a result, denies same.

(Doc. # 52 at 4) (emphasis added).

Plaintiff moved for summary judgment on February 21, 2018.  (Doc. ## 59, 60.)

In his Declaration in support of summary judgment, Plaintiff repeated his allegation that on February 18, 2017, "Defendant Watson came to Plaintiff's cell stating she had a call to shakedown the cell but never stated who had called her with those instructions." (Doc. # 59-1 at 1.)  In their Response to the Motion for Summary Judgment, filed April 16, 2018, Defendants denied this allegation.  (Doc. # 86 at 2.)  Defendants stated, "To the best of [Defendant] Sgt. Watson's recollection, **she did not have a call**, but decided to search the cell based on items hanging in the cell that were not authorized."  (*Id.*) (emphasis added).  In an accompanying affidavit, Defendant Watson asserted:

3.      On February 18, 2017, at about 10:30 a.m., I was in Living Unit 8 and conducted a shakedown of the cell shared by Offender Waldo Mackey and Offender Rodney Fogland.
4.      To the best of my memory, I decided to conduct the shake down because during my regular rounds in the living unit, I observed that the cell had a bed sheet hung as a curtain and a television and cables hanging from the wall, which is not allowed.
. . .
7.      **My observation of these items gave me reason to conduct a shakedown of the cell and I was not motivated by any other reason**.

(Doc. # 86-1 at 1–2) (emphasis added).

Pursuant to the Scheduling Order, the deadline to amend pleadings was April 19, 2018.  (Doc. # 74 at 6.)

Magistrate Judge Varholak recommended that the Court deny Plaintiff's Motion for Summary Judgment on August 2, 2018. (Doc. # 115.) In assessing Plaintiff's contention that Defendant Watson retaliated against him after he complained about her search of his cell, Magistrate Judge Varholak wrote:

> Plaintiff contends that Sergeant Watson searched the cell he shared with Mr. Fogland on February 18, 2017, because she had received a call telling her to shakedown the cell. Although Defendants contend in their response to the Motion that "[t]o the best of [Sergeant] Watson's recollection, she did not have a call" to shakedown the cell, in Defendants' Answer to the Complaint, "Defendant Watson admit[ted] she had a call to search Plaintiff's cell on February 18, 2017". The Tenth Circuit has held that "[a]dmissions in the pleadings ... are in the nature of judicial admissions binding upon the parties, unless withdrawn or amended." *Grynberg v. Bar S Servs., Inc.*, 527 F. App'x 736, 739 (10th Cir. 2013) (quotation omitted). As a result, a party's attempt to "disavow his earlier judicial admissions . . . with seemingly contrary evidence at summary judgment does not create a disputed issue of fact." *Id.* **Defendants have not sought to amend or withdraw their Answer and offer no explanation for the contradictory statements**. For purposes of Plaintiff's Motion, the **Court thus accepts as an undisputed fact that Sergeant Watson received a call to shakedown the cell of Plaintiff** and Mr. Fogland on the morning of February 18, 2017.
> Plaintiff does not allege that the call received by Sergeant Watson resulted from any protected activity in which Plaintiff himself had previously engaged.

(*Id.* at 11–12) (footnote and internal citations omitted) (emphasis added). However, his decision to accept as an undisputed fact that Defendant Watson had received a call directing her to search Plaintiff's cell did not bear on his conclusion that Plaintiff was not entitled to summary judgment on Claim Four. *See* (*id.* at 12–14.) This Court affirmed and adopted Magistrate Judge Varholak's Recommendation and denied Plaintiff's Motion for Summary Judgment on September 13, 2018. (Doc. # 133.)

On November 26, 2018, Defendants filed their Motion to Amend Answer, asserting:

Defendants' Answer filed with this Court contains an inaccurate admission that Defendant Watson received a telephone call on February 18, 2017, prompting her to conduct a shakedown of Plaintiff's cell. As reflected in Defendant Watson's Affidavit previously submitted to this Court, the statement contained in the Answer regarding Defendant Watson receiving a telephone call is inaccurate. Actually, Defendant Watson conducted the shakedown of Plaintiff's cell because of her observations of the cell and not because she received a telephone call from anyone else.

(Doc. # 161 at 1.) Defendants requested that, pursuant to Federal Rules of Civil Procedure 15(a) and 16(b)(4), the Court grant them leave to file an Amended Answer, *see* (Doc. # 161-1), "to correct the mistaken reference to Defendant Watson having received a telephone call as prompting the shakedown of Plaintiff's cell on February 18, 2017" (Doc. # 161 at 4). Alternatively, they sought to "withdraw the incorrect admission contained in paragraph 66 of [their] Answer" concerning Defendant Watson having received a phone call to search Plaintiff's cell. (*Id.* at 8.) Plaintiff responded in opposition to Defendants' Motion to Amend Answer on December 17, 2018, arguing that the original Answer, in which Defendant Watson admitted she had received a call to search Plaintiff's cell, was accurate and that she shouldn't subsequently be permitted to change her "version of facts according to how the Court has ruled on the issues." (Doc. # 171 at 1.) Plaintiff also asserted that he would be prejudiced if the Court allowed Defendants to amend their Answer. (*Id.* at 10.) Defendants replied in support of their Motion to Amend Answer on January 7, 2019. (Doc. # 178.)

Magistrate Judge Varholak conducted a hearing on Defendants' Motion to Amend Answer on January 8, 2019.[1] (Doc. # 179); *see* (Doc. # 194-2 (transcript of

---

[1] Magistrate Judge Varholak also heard argument on Plaintiff's Memorandum of Law in Support of a Motion for a Temporary Restraining Order (Doc. # 147) and on Plaintiff's filing titled

motions hearing)).  He raised two questions concerning Defendants' Motion to Amend Answer: first, what the relevance of Defendant Watson's allegedly erroneous admission in Paragraph 66 of the Answer was to Plaintiff's fourth claim, and second, whether Defendants had met the good cause standard of Rule 16(b)(4) to allow amendment of their Answer.  (Doc. # 194-2 at 3–4.)  After hearing argument on both questions from Defendants' counsel, Magistrate Judge Varholak concluded that under Rule 16(b)(4), he was unable to find "good cause to amend [the Scheduling Order] to allow amendment of the [A]nswer."  (*Id.* at 19.)  He therefore denied Defendants' Motion to Amend Answer without reaching the standard for amendment of a pleading pursuant to Rule 15(a)(2).  (*Id.* at 20.)

Approximately two weeks later, on January 25, 2019, Defendants filed the Objection presently before the Court.  (Doc. # 194.)  Defendants assert that "the totality of the circumstances warrant allowing the minor amendment to [their] Answer to correct the inaccuracy in what prompted Defendant Watson to conduct a shakedown of Plaintiff's cell."  (*Id.* at 11.)  They ask the Court to "overrule the Magistrate Judge's denial and grant them leave to amend their Answer and accept [their] Amended Answer [(Doc. # 161-1)] . . . for filing with this Court."  (Doc. # 194 at 14.)  Plaintiff responded in opposition to Defendants' Motion to Amend Answer on February 7, 2019.  (Doc. # 209.)

---

"Defendants Have Committed Intentional Fraud Which is Still Ongoing Pursuant to [Rule] 9(b)" (Doc. # 149) at the hearing.  (Doc. # 179.)  He took under advisement Plaintiff's request for a temporary restraining order and denied Plaintiff's filing alleging ongoing fraud.  (*Id.*)  The Court later denied Plaintiff's request for a temporary restraining order.  (Doc. ## 219, 227.)

## II.   <u>STANDARD OF REVIEW</u>

Where a magistrate judge issues an order on a non-dispositive, pretrial order, "[a] party may serve and file objections to the order to the district court within 14 days after being served with a copy."  Fed. R. Civ. P. 72(a).  The district court must modify or set aside any part of the order that "is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(a)(A); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000).

With regard to legal matters, the district court conducts an independent, plenary review of the magistrate judge's order.  *In re Motor Fuel Temperature Sales Practice Litig.*, 707 F. Supp. 2d 1145, 1148 (D. Kan. 2010); *see also* 12 Charles Alan Wright, et al., Federal Practice & Procedure § 3069 (2d ed. 2017).  Under the 'contrary to law' standard, the reviewing court "set[s] aside the magistrate order only if it applied an incorrect standard," *Dias v. City & Cty. of Denver*, No. 07-cv-00722-WDM-MJW, 2007 WL 4373229, *2 (D. Colo. Dec. 7, 2007) (internal quotations omitted), or applied the appropriate legal standard incorrectly, *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, No. 12-cv-3012-WJM-BNB, 2014 WL 5599127, *1 (D. Colo. Nov. 4, 2014).

As to factual findings by the magistrate judge, the 'clearly erroneous' standard "requires that the reviewing court affirm unless it 'on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"  *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quoting *United States v. United*

*States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  This is a deferential standard.  *In re Motor Fuel Temperature Sales Practice Litig.*, 707 F. Supp. 2d at 1147.

### III.  ANALYSIS

### A.  LEGAL RULES FOR AMENDMENT OF PLEADINGS

Defendants moved to amend their Answer—well after the Scheduling Order's deadline to amend pleadings had passed—pursuant to Rule 15(a) and 16(b)(4).  (Doc. # 194 at 7.)  The Court begins by explicating these rules, as well as their interplay.

#### 1.  Rule 15(a)(2)

Rule 15 governs amendments to pleadings generally.  *See* Fed. R. Civ. P. 15.  "Except when an amendment is pleaded as a 'matter of course,' as defined by the rule, 'a party may amend its pleading only with the opposing party's written consent or with court's leave.'"  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting Fed. R. Civ. P. 15(a)(2)).  The Court "should freely grant leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The purpose of Rule 15 "is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).  Accordingly, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).  Whether to grant leave to amend a pleading pursuant to Rule 15 is within the Court's wide discretion.  *Minter*, 451 F.3d at

1204 (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)).

2.    Rule 16(b)(4)

Rule 16 governs amendments to pretrial scheduling orders and gives the Court "wide latitude in entering scheduling orders."  *Burks v. Okla. Pub. Co.*, 81 F.3d 975, 978 (10th Cir. 1996); *see* Fed. R. Civ. P. 16.  Relevant here, Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  Rule 16(b)(4)'s good cause standard is "an arguably more stringent standard than the standards for amending a pleading under Rule 15," *Bylin*, 568 F.3d at 1231, but the Court of Appeals for the Tenth Circuit has noted "the rough similarity between the 'good cause' standard of Rule 16(b) and [its] 'undue delay' analysis under Rule 15," *Minter*, 451 F.3d at 1205 n.4.  Satisfying Rule 16(b)(4)'s good cause standard "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (quoting *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994)); *see Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).  "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has been changed."  *Gorsuch*, 771 F.3d at 1240 (citing *Pumpco, Inc. v. Schenker*, 204 F.R.D. 667, 668 (D. Colo. 2001)).  In contrast, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief" under Rule 16(b)(4).  *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D.

684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., Inc. v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997), *aff'd*, 129 F.3d 116 (4th Cir. 1997)).  The Tenth Circuit has observed that "appellate courts that have applied Rule 16 have afforded wide discretion to district courts' applications of that rule."  *Bylin*, 568 F.3d at 1231 (collecting cases).

      3.     <u>Interplay Between the Rules</u>

      As the Court just explained, Rule 15(a)(2) governs the amendment of pleadings, and Rule 16(b)(4) governments the amendment of pretrial scheduling orders.  *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009). "Rule 15 does not restrict a party's ability to amends its pleadings to a particular stage in the action."  *Minter*, 451 F.3d at 1205.  "For that reason, there is an interplay between [Rule 15(a)(2) and Rule 16(b)(4)] if"—as is the case here—"a party seeks to amend a pleading after the scheduling order's deadline for amending pleadings."  *Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2011 WL 4102287, *3 (D. Colo. Sept. 14, 2011); *see Squires, ex rel. Squires v. Goodwin*, No. 10-cv-00309-CBS, 2012 WL 37508, *2 (D. Colo. Jan. 9, 2012) (where the plaintiff sought relief pursuant to Rule 15(a) "well beyond" the deadline for amendment of pleadings in the scheduling order, it was necessary for the Court to "consider the interplay between Rule 15(a) and [Rule] 16(b)(4).").  It is beyond doubt that a party seeking to amend a pleading after the scheduling order's deadline for doing so has expired must satisfy Rule 15(a)(2). *Rehberg*, 2011 WL 4102287 at *3 (citing *Lockheed Martin Corp.*, 558 F.3d at 1166). However, "it is unclear whether a plaintiff seeking to amend an existing pleading after a

scheduling order's pleading amendment deadline must meet Rule 16(b)(4)'s 'good cause' requirement." *Id.* Though the Tenth Circuit has recognized that "[m]ost circuits have held that when a party amends a pleading after a deadline set forth by a scheduling order, Rule 16 and its 'good cause' standard are implicated," the Tenth Circuit "has not ruled on that question in the context of an amendment to an existing pleading." *Bylin*, 568 F.3d at 1231 n.9 (collecting cases). The Court explained the significance of this question:

> This matters because Rule 16(b)(4) imposes "an arguably more stringent standard than the standards for amending a pleading under Rule 15." . . . Thus, if a plaintiff must meet both rules, it is entirely conceivable that he could satisfy Rule 15(a)(2) but fail Rule 16(b)(4) and would therefore be precluded from amending his complaint. Conversely, if he must meet only Rule 15(a)(2), whether he can show "good cause" under Rule 16(b)(4) is irrelevant.

*Rehberg*, 2011 WL 4102287 at *3 (internal citations omitted).

Despite the lack of a conclusive answer from the Tenth Circuit, "lower courts in the Tenth Circuit repeatedly have looked to Rule 16(b)(4) when a party seeks leave to amend pleadings after the deadline for amending pleadings has passed." *Squires*, 2012 WL 37508 at *2 (collecting cases). In this case, the parties and Magistrate Judge Varholak all analyzed Defendants' Motion to Amend Answer under both Rule 15(a)(2) and Rule 16(b)(4).

## B.   APPLICATION

Turning to Defendants' Motion to Amend Answer, this Court, like many other district courts in the Tenth Circuit before it, considers Defendants' request pursuant to Rule 15(a)(2) and Rule 16(b)(4). Though some cases begin this two-part analysis with

Rule 16(b)(4), this Court begins with Rule 15(a)(2). *See Rabin v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, No. 10-cv-016450LTB-KLM, 2012 WL 527479, *3 (D. Colo. Feb. 17, 2012) (collecting cases and addressing Rule 15(a)(2)'s standard first). This is because "when the Tenth Circuit has held that Rule 15(a)(2) is unsatisfied, it does not address Rule 16(b)(4)." *Id.* (citing, *e.g.*, *Lockheed Martin Corp.*, 558 F.3d at 1166; *Martinez v. Target Corp.*, 384 F. App'x 840, 846–47 (10th Cir. 2010)).

        1.   <u>Defendants' Satisfaction of Rule 15(a)(2)</u>

Magistrate Judge Varholak did not consider whether Defendants' Motion to Amend Answer satisfied Rule 15(a)(2) because, as the Court details in Section III(B)(2) below, he erroneously determined that Defendants had not satisfied Rule 16(b)(4)'s good cause standard and thus believed he "[did]n't need to get to the Rule 15" analysis. (Doc. # 194-2 at 20.) Plaintiff has not addressed whether Defendants satisfy Rule 15(a)(2) either; rather, he argues that only Rule 16(b)(4) governs Defendants' Motion to Amend Answer and that Rule 15(a)(2) is the "wrong rule and procedure." (Doc. # 171 at 8; Doc. # 209 at 5.) For the reasons the Court discussed in Section III(A) above, the Court must consider whether Defendants' request to amend their Answer satisfies Rule 15(a)(2).

The Court concludes that Defendants meet the standard to amend their Answer pursuant to Rule 15(a)(2). At the outset, "consonant with Rule 15(a)(2)'s language and purpose, [the Court's] predilection is to grant" permission to make the limited amendment to their Answer. *Rehberg*, 2011 WL 4102287 at *4 (citing Fed. R. Civ. P. 15(a)(2); *Minter*, 451 F.3d at 1204.) The inquiry thus turns on "whether there has been

a showing of '**undue delay, undue prejudice to the opposing party**, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.'" *Id.* (quoting *Frank*, 3 F.3d at 1365.)  Though Plaintiff does not address Rule 15(a)(2) directly, he does argue that Defendants' request was untimely and would unduly prejudice him.[2]  *See* (Doc. # 171 at 5–11.)  The Court thus confines its analysis to those two factors.  In its wide discretion, it finds neither undue delay nor undue prejudice in Defendants' Motion to Amend Answer.

       *a.  There was no undue delay*

With respect to the timeliness of Defendants' Motion to Amend Answer, Rule 15(a)(2) does not restrict a party's ability to amend its pleadings to a specific stage in litigation, and "[l]ateness does not of itself justify the denial of the amendment."  *Minter*, 451 F.3d at 1205 (quoting *R.E.B., Inc. v. Ralston Purina Co.*, 525 F.2d 749, 751 (10th Cir. 1975)).  However, a party who unduly delays amending its pleadings "is acting contrary to the spirit of the rule and runs the risk of the [C]ourt denying permission because of the passage of time."  *Id.* (quoting 6 Wright, Miller & Kane, Fed. Practice & Procedure § 1488 (2d ed. 1990)).  In determining what constitutes undue delay under Rule 15(a)(2), the Tenth Circuit "focuses primarily on the reasons for the delay."  *Id.*  Relevant here, the Tenth Circuit has "held that the denial of leave to amend is

---

[2] At the time Plaintiff made the filings at issue here, he proceeded *pro se*.  When a party proceeds *pro se*, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."  *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  However, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

appropriate 'when the party filing the motion has no adequate explanation for the delay.'"  *Id.* (citing *Frank*, 3 F.3d at 1365–66; *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994)).  The Tenth Circuit has also recognized that denial of a motion to amend is proper when:

> [I]t appears that [the movant] is using Rule 15 to make the [pleading] "a moving target," . . . to "salvage a lost case by untimely suggestion of new theories of recovery," . . . to present "theories seriatim" in an effort to avoid dismissal, . . . or to "knowingly delay[ ] raising [an] issue until the 'eve of trial.'"

(*Id.*) (internal citations omitted).

Defendants concede that they were delayed in filing their Motion to Amend Answer by more than seven months after the deadline for the amendment of pleadings but assert that blame for the delay falls squarely on their former counsel.  (Doc. # 194 at 6–9.)  They argue that their former counsel erroneously wrote in Paragraph 66 of their Answer that Defendant Watson "admitt[ed] she had a call to search Plaintiff's cell on February 18, 2017," but that Defendant Watson "never reviewed nor approved the Answer" and thus was unaware of the erroneous admission.  (*Id.* at 8.)  Though Defendant Watson "did review and execute" an affidavit on April 16, 2018—before the deadline for amendment of pleadings had expired—that contradicted Paragraph 66 of the Answer and stated that she decided "to conduct the shake down because during [her] regular rounds in the living unit, [she] observed" disallowed items in Plaintiff's cell (Doc. # 86-1), Defendants contend that Defendant Watson "was never informed of this contradiction" between her April 16, 2018 affidavit and the Answer by her former counsel.  (Doc. # 194-1 at 2.)  Defendants' current counsel, Andrew D. Ringel, entered

his appearance on October 4, 2018 (Doc. # 137),[3] two months after Magistrate Judge Varholak explicitly discussed the contradiction between Paragraph 66 of the Answer and Defendant Watson's April 16, 2018 affidavit in his Recommendation on Plaintiff's Motion for Summary Judgment (Doc. # 115 at 11).  Defendants assert that shortly after their current counsel began representing them, their current counsel informed them of the contradiction between Paragraph 66 of their Answer and Defendant Watson's April 16, 2018 affidavit (and the related assertion in Defendants' Response to Plaintiff's Motion for Summary Judgment, *see* (Doc. # 86 at 2)), and that this was the first time they became aware of this issue.  *See* (Doc. # 194-1 at 2.)  They claim that their current counsel then "diligently sought leave to amend the [A]nswer."  (Doc. # 194 at 9.) Defendants filed their Motion to Amend Answer on November 26, 2018 (Doc. # 161), approximately six weeks after their current counsel entered his appearance.

The Court accepts Defendants' explanation.  Though Defendants' former counsel should have moved to amend the Answer soon after Magistrate Judge Varholak implicitly suggested doing so in his August 2, 2018 Recommendation, *see* (Doc. # 115 at 11–12) ("Defendants have not sought to amend or withdraw their Answer and offer no explanation for the contradictory statements"), the Court sees nothing to suggest that Defendants were purposefully "acting contrary to the spirit" of Rule 15, *see Minter*, 541 F.3d at 1205.  In stark contrast to cases where courts have denied a late motion to amend a pleading, it does not appear that Defendants' delay in moving to amend their

---

[3] The Court observes that attorney Edmund M. Kennedy also appears to represent Defendants. *See, e.g.*, (Doc. # 194 at 1, 14.)  However, it sees no Notice of Entry of Appearance for Mr. Kennedy on the docket.

Answer in this matter was a result of gamesmanship or an attempt to "salvage a lost case by untimely suggestion of new theories." *See id.* at 1206 (quoting *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001)). The Court therefore cannot find any **undue** delay pursuant to Rule 15(a)(2).

### b. Plaintiff will not suffer undue prejudice

"The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Id.* at 1207. As the Tenth Circuit previously explained:

> Courts typically find prejudice only when the amendment unfairly affects the defendants "in terms of preparing their defense to the amendment." Most often, this occurs when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues.

*Minter*, 451 F.3d at 1208 (internal citations omitted) (collecting cases).

Defendants state that because "[t]his error was first brought to the attention of all parties in April and May of 2018, during the briefing of Plaintiff's Motion for Summary Judgment," *see* (Doc. # 86 at 2; Doc. # 92 at 2), and "was mentioned in the Recommendation [of Magistrate Judge Varholak] to Deny Summary Judgment in August of 2018," *see* (Doc.# 115 at 11), "all parties were aware of the error" in Paragraph 66 of Defendants' Answer well before they filed their Motion to Amend Answer and "no prejudice can be claimed by any party." (Doc. # 194 at 2.) More specifically, they assert that "Plaintiff has known about Defendant Watson's denial of receiving a call since, at least, April 16, 2018," when Defendants filed their Response to Plaintiff's summary judgment motion and attached as an exhibit Defendant Watson's

affidavit, *see* (Doc. ## 86, 86-1).  (Doc. # 194 at 12.)   Defendants also argue that Plaintiff will not be prejudiced if they are permitted to amend Paragraph 66 of the Answer "because the 'call' is not the basis of [Plaintiff's] claim against Defendant;" rather, Claim Four is based on Defendant Watson's "alleged retaliatory actions after Plaintiff complained to her about the search upon her arrival at his cell."  (*Id.*)  To the extent Plaintiff may be prejudiced by an amendment to the Answer at this stage in the litigation, Defendants state that any such prejudice "can be cured by allowing . . . Plaintiff limited discovery on this issue."  (Doc. # 161 at 8.)

Allowing Defendants to make a limited amendment to Paragraph 66 of the Answer would not unduly prejudice Plaintiff.  The Court agrees with Defendants that the detail they seek to amend—whether Defendant Watson received a call instructing her to search Plaintiff's cell—"is not relevant to Plaintiff's [Claim Four] because the basis of that claim is that Plaintiff complained of [Defendant Watson's] search and due to that specific complaint, Defendant Watson retaliated by confiscating some of Plaintiff's property."  (Doc. # 194 at 6); *see* (Doc. # 194-2 at 3.)  In short, Defendant Watson's initial reason for searching Plaintiff's cell is immaterial.  The Court therefore does not see how allowing Defendants' minor amendment to the Answer would "unfairly affect" Plaintiff "in terms of preparing" his response "to the amendment."  *See Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 442 F.2d 79, 86 (10th Cir. 1971)).  Defendants' proposed amended Answer would still "track the factual situations set forth in" their original Answer.  *See Gillette v. Tansy*, 17 F.3d 308, 313 (10th Cir. 1994) (finding no

evidence of prejudice when the "Petitioner's [amended] claims track the factual situations set forth in his [original] claims.").

Plaintiff's allegations of prejudice do not persuade the Court otherwise. *See* (Doc. # 171 at 10–11.) He contends that Defendants' proposed amendment to Paragraph 66 of the Answer would "change[] the motive and intent" of Defendant Watson in searching his cell and would therefore "highly prejudice [him]." (*Id.* at 10.) However, Defendant Watson's "motive and intent" for searching the cell is irrelevant to Plaintiff's fourth claim, as the Court has already explained. As Magistrate Judge Varholak paraphrased—a paraphrase with which Plaintiff explicitly agreed:

> The basis of [Claim Four] . . . is that when [Defendant] Watson went to search [Plaintiff's] cell, [Plaintiff] complained about the search at that cell, saying it was searched just the day before. And in retaliation for [Plaintiff's] complaint, [Defendant Watson] took various actions.

(Doc. # 194-2 at 3.) Plaintiff makes no attempt to explain why the proposed amendment to Paragraph 66 of the Complaint is relevant to his fourth claim. Accordingly, the Court is satisfied that permitting the amendment would not unfairly affect Plaintiff's ability to prepare to present Claim Four at trial. The Court concludes that no undue prejudice would result from permitting Defendants to make a limited amendment to Paragraph 66 of the Answer.

Because Plaintiff has made no showing of undue delay or undue prejudice, and in keeping with the spirit of Rule 15, the Court sees no reason to refuse leave to amend the Answer pursuant to Rule 15(a)(2). *See Frank*, 3 F.3d at 1365.

2.    <u>Defendants' Satisfaction of Rule 16(b)(4)</u>

As the Court stated in Section I, Magistrate Judge Varholak denied Defendants' Motion to Amend Answer because he determined that Defendants failed to satisfy Rule 16(b)(4)'s good cause standard.  (Doc. # 194-2 at 19.)  At the January 8, 2019 hearing on Defendants' Motion to Amend Answer, Magistrate Judge Varholak reviewed the procedural history relevant to Defendants' erroneous admission in Paragraph 66 of the Complaint:

> [S]o we have at least six months from the time [Plaintiff] first raises this issue [of the discrepancy in Defendant Watson's admissions regarding why she searched Plaintiff's cell] [in his May 5, 2018 Reply in support of his Motion for Summary Judgment (Doc. # 92 at 2)], and three months from the time I raise it in a footnote [in his August 2, 2018 Recommendation (Doc. # 115 at 12)], and after at least one, possibly two, hearings on the issue, until the [M]otion to [A]mend is filed [on November 26, 2018].   And there's no explanation given for that, and current counsel can't give an explanation for it.

(*Id.* at 17–18.)  Magistrate Judge Varholak acknowledged that "it isn't this [defense] counsel who made the prior admission" in the Answer; "[i]t was two counsels ago."  (*Id.* at 5).  Nevertheless, he ruled against Defendants, explaining:

> And so, . . . if I have to determine "has good cause been shown?", I can't conclude that it has.   This fact has been known conceivably since the beginning of this case, because all that need be done is if [Defendant] Watson does not believe she received a call for this, just ask [Defendant] Watson, you know, and certainly [Defendant] Watson should have been given the initial answers to the [C]omplaint to make sure that the [A]nswer was accurate.  I find it hard to believe that she wouldn't have been.
>
> But regardless, once this issue is brought to the forefront, first by [Plaintiff] in May [2018], and then by the Court in August [2018], then immediately something should have been done.  And this distinguishes the case relied on by defense counsel, [*Jornigan v. New Mexico Mut. Cas. Co.*, 228 F.R.D. 661 (D.N.M. 2004)].

(*Id.*)  He concluded that in contrast to the circumstances of *Jornigan*, because in this matter "it's not until months later, once the third counsel gets involved . . . , that we have this corrective action taken"—that is, the filing of Defendants' Motion to Amend Answer, "[he] simply [couldn't] see how [he] [could] find good . . . cause to amend to allow the amendment of the Answer."  (*Id.* at 19.)

As the Court explained above, Rule 16(b)(4) only allows amendments to scheduling orders for good cause.  Fed. R. Civ. P. 16(b)(4).  The rule's good cause standard "requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  *Strope*, 315 F. App'x at 61 (quoting *Moothart*, 21 F.3d at 1504).  This standard is roughly similar to the standard for amending a pleading under Rule 15.  See *Minter*, 451 F.3d at 1205 n.4.  The party requesting an amendment to its scheduling order "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."  *Deghand v. Wal-Mart Stores, Inc.,* 904 F. Supp. 1218, 1221 (D. Kan. 1995) (citing *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir. 1987)).  While a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril," *id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992)), the Tenth Circuit has recognized that "rigid adherence to the pretrial scheduling order is not advisable."  *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1519 (10th Cir. 1990) (citing *Smith Contracting Corp. v. Trojan Constr. Corp.*, 192 F.2d 234, 236 (10th Cir. 1951)).

Defendants argue that good cause for amending the Scheduling Order exists because "the inaccuracy in [their] Answer is the product of prior counsel for Defendants, not Defendant Watson herself." (Doc. # 194 at 12.) They assert that "this type of error by counsel should be permitted to be corrected," relying on *Jornigan*, 228 F.R.D. at 664, as persuasive authority. (*Id.*); *see also* (Doc. # 161 at 7.) In *Jornigan*, the defendant moved under Rule 15 to amend his answer to the complaint to correct his attorney's mistaken admission that he was a state employee. 228 F.R.D. at 662. The district court granted the defendant's motion on the grounds that there was no evidence the defendant acted in bad faith, his motion was not untimely, and amendment of the answer would not prejudice the plaintiffs. *Id.* at 663–65. In the matter presently before this Court, Defendants assert that like counsel in *Jornigan*, its "current counsel took action reasonably upon learning of the mistake [in the Answer]." (Doc. # 194 at 12.) They fault Magistrate Judge Varholak for "inappropriately punishing Defendant Watson for mistakes made by counsels who no longer are part of this case." (*Id.*)

At the outset, the Court concludes that *Jornigan* is inapposite to a good cause analysis under Rule 16(b)(4). The defendant in *Jornigan* moved for relief under Rule 15 only, and the District Court did not address Rule 16(b)(4) or "good cause" at all. 228 F.R.D. at 663. The *Jornigan* Court was singularly concerned with Rule 15. *Id.* Thus, *Jornigan* has little, if any, persuasive value to this Court's inquiry regarding whether Defendants have satisfied Rule 16's good cause standard. To the extent that Defendants and Magistrate Judge Varholak relied upon *Jornigan* in their discussion of

good cause under Rule 16, they applied an incorrect standard.[4]  *See* (Doc. # 194-2 at 18–19); *see also Dias*, 2007 WL 4373229 at *2 (under the 'contrary to law standard,' the Court must set aside a magistrate judge's order if it applied an incorrect standard).

Upon its independent, plenary review of Magistrate Judge Varholak's conclusion that Defendants failed to establish good cause under Rule 16(b)(4), *see* (Doc. # 194-2 at 4–20), this Court finds that Defendants **do** show good cause to permit amendment of the Scheduling Order, such that they should be granted leave to amend their Answer. Defendants have proven that they have been "diligent in attempting to meet the deadlines" and "provide an adequate explanation for any delay," as the Court explained in its discussion of undue delay under Rule 15 in Section III(1)(a) above.  *See Strope*, 315 F. at 61.  Defendants' current counsel informed Defendant Watson of the discrepancy between Paragraph 66 of the Answer and her later assertion that she did not receive a call to search Plaintiff's cell shorty after current counsel entered his appearance October 4, 2018, *see* (Doc. # 194-1; Doc. # 137), and Defendants filed the Motion to Amend Answer approximately six weeks later, on November 26, 2018, *see* (Doc. # 161).  This timeline suggests Defendants and their current counsel have proceeded with diligence.  To the extent that Defendants' previous counsel were less diligent in seeking to correct the inaccurate admission in Paragraph 66 of the Answer, the Court will not hold previous counsels' apparent inattentiveness against Defendants.

---

[4] Magistrate Judge Varholak did correctly observe that "[i]n *Jornigan*, . . . The court does not talk about good cause" and noted that it was not "clear to [him] whether or not Rule 16 was triggered, as opposed to just Rule 15."  (Doc. # 194-2 at 18.)  Nonetheless, Magistrate Judge Varholak proceeded to distinguish Jornigan from this case in his discussion of Rule 16's good cause standard.  (*Id.* at 18–19.)

"The courtroom should remain a place where truth and justice are sought, and not where attorney mistakes are used to penalize the litigants." *Jornigan*, 228 F.R.D. at 664; *see also Triplett v. LeFlore Cty., Okla.*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting Conley v. Gibson, 255 U.S. 41, 48 (1957)) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.")

For these reasons, and because the Court has "wide latitude" in managing scheduling orders, *see Burks*, 81 F.3d at 978, the Court finds that it is appropriate to amend the Scheduling Order under Rule 16 to permit Defendants to amend Paragraph 66 of their Answer. The Court thus overrules Magistrate Judge Varholak's denial of Defendants' Motion to Amend Answer. (Doc. # 179.)

## IV.     <u>CONCLUSION</u>

For the reasons set forth above, the Court ORDERS as follows:

1.     Defendants' Objection (Doc. # 194) to the Magistrate Judge's denial of their Motion to Amend Answer is SUSTAINED;

2.     The Magistrate Judge's oral order (Doc. # 179) denying Defendants' Motion to Amend Answer is VACATED;

3.     Defendants' Motion to Amend Answer (Doc. # 161) is GRANTED;

4.    Defendants' proposed Amended Answer (Doc. # 161-1) is ACCEPTED FOR

FILING.[5]  The Clerk of the Court shall docket Defendants' proposed Amended

Answer (Doc. # 161-1) in its own entry.



DATED:  August 5, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[5] Because the only amendment to the Answer is in Paragraph 66, the filing of Defendants' Amended Answer does not bear on Defendants' Motion for Summary Judgment (Doc. # 172) and the Magistrate Judge's subsequent Recommendation (Doc. # 215).  The Court will address Defendants' Motion for Summary Judgment in due time.