**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 17-cv-01341-CMA-STV

WALDO MACKEY,

      Plaintiff,

v.

BRIDGETTE WATSON, and
SUSAN PRIETO,

      Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR REMITTUR, OR IN THE ALTERNATIVE, A NEW TRIAL ON PUNITIVE DAMAGES; DENYING DEFENDANTS' MOTION FOR EXTENSION OF STAY OF EXECUTION OF JUDGMENT; AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S PARTIALLY OPPOSED MOTION FOR ATTORNEY FEES**

---

      This matter is before the Court on three motions: Defendants' Motion for Remittitur or, in the Alternative, for New Trial on Punitive Damages ("Motion for Remittitur") (Doc. # 286), Defendants' Motion for Extension of Stay of Execution of Judgment Pending Resolution of their Motion for Remittitur and Any Appeal ("Motion for Stay") (Doc. # 287), and Plaintiff Waldo Mackey's Partially Opposed Motion for Attorney Fees ("Motion for Attorney Fees") (Doc. # 285). For the reasons that follow, the Court denies Defendants' Motions for Remittitur and Stay and grants in part and denies in part Plaintiff's Motion for Attorney Fees.

## I.      **BACKGROUND**

The Court's previous Order Affirming and Adopting the February 27, 2019 Recommendation of United States Magistrate Judge and Denying Defendants' Motion for Summary Judgment (Doc. # 267) recites the factual and procedural background of this dispute and is incorporated herein by reference. Accordingly, this Order will reiterate only what is necessary to address the instant Motions.

Plaintiff Waldo Mackey filed this lawsuit *pro se* while he was incarcerated at the Fremont Correctional Facility in Cañon City, Colorado. He claimed, in relevant part, that Defendant Bridgette Watson, a sergeant at Fremont Correctional Facility, retaliated against him for exercising "his right to grieve/complain" in violation of the First Amendment by performing harassing searches of his cell, confiscating his prescription eyeglasses and clothing, directing other staff to terminate him from his job as an Offender Care Aid, and filing a false disciplinary report. (Doc. # 1 at 16–21); (Doc. # 6 at 3–4). He further claimed that Defendant Susan Prieto, a hearing officer at the correctional facility, denied him his due process rights in violation of the Fourteenth Amendment at a Code of Penal Discipline ("COPD") disciplinary hearing on March 9, 2017, by excluding his witnesses and by informing him that videotape of the incident with Defendant Watson had been taped over and that he should have asked for it within three days of the incident. (Doc. # 1 at 21–22); (Doc. # 6 at 4).

Plaintiff tried his First and Fourteenth Amendment claims to a jury from September 16 through 18, 2019. At trial, Mr. Mackey submitted evidence that Defendant Watson had violated his First Amendment rights by confiscating his prescription

eyeglasses and/or issuing a false incident report against him after he complained about her search of his cell, and that Defendant Prieto violated his Fourteenth Amendment procedural due process rights by convicting him of a COPD violation despite the corrections officers' failure to preserve potentially exculpatory videotape evidence and by excluding Mr. Mackey's witness testimony that would have shown Defendant Watson had a motive to lie about the search. The jury returned a verdict in favor of Mr. Mackey on both claims. (Doc. # 279.) The jury awarded $1 in nominal damages and $60,000 in punitive damages against Defendant Watson and $1 in nominal damages and $120,000 in punitive damages against Defendant Prieto. Final judgment entered in favor of Plaintiff and against Defendants Watson and Prieto on September 19, 2019. (Doc. # 281.) The instant Motions followed.

## II.   DISCUSSION

### A.   DEFENDANTS' MOTION FOR REMITTITUR

Defendants argue that the jury's punitive damage award was so grossly excessive as to violate the due process clause of the Fourteenth Amendment. They move the Court to order remittitur of Plaintiff's $180,000 punitive damages award to $18, representing a 1:9 ratio of compensatory to punitive damages per Defendant or, in the alternative, to order a new trial on damages. The Court declines to set aside the punitive damages awarded by the jury, finding that the award was not motivated by passion, prejudice, or bias, and is not so excessive as to shock the judicial conscience. *See Mason v. Texaco, Inc.*, 948 F.2d 1546, 1560 (10th Cir. 1991).

1.   <u>Applicable Law</u>

 "Punitive damages are only available in a Section 1983 action when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Hampton v. Evans*, No. 11-cv-01415-RM-CBS, 2015 WL 1326147, at *4 (D. Colo. Mar. 20, 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The Supreme Court established the guideposts for evaluating the constitutionality of a punitive damages award in *BMW of North America, Inc. v. Gore,* 517 U.S. 559 (1996). They are: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 409 (2003). "Additionally, in analyzing a punitive damages award for excessiveness, [courts] must consider the goal of deterrence." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1272 (10th Cir. 2000) (citations omitted).

2.   <u>Analysis</u>

a.   *Reprehensibility of Defendants' conduct*

The degree of reprehensibility is "perhaps the most important indicium of the reasonableness of a punitive damages award." *Gore,* 517 U.S. at 575–76. The Supreme Court has observed that "some wrongs are more blameworthy than others," noting that "trickery and deceit" are more reprehensible than negligence. *Id.* (citations

omitted). The Tenth Circuit has considered the following factors in evaluating reprehensibility: whether a defendant's behavior causes economic rather than physical harm, would be considered unlawful in all states, involves repeated acts rather than a single one, is intentional, involves deliberate false statements rather than omissions, and is aimed at a vulnerable target. *Cont'l Trend Res., Inc. v. OXY USA Inc.*, 101 F.3d 634, 638 (10th Cir. 1996). Purely economic harm may warrant less punishment than harm to the health or safety of individuals. *Id.*

Applying the Tenth Circuit's indicia of reprehensibility to the instant case, the Court finds that Defendants' misconduct was reprehensible.

First, Defendants caused Mr. Mackey harm. Defendant Watson's confiscation of Mr. Mackey's prescription eyeglasses caused him pain in the form of debilitating migraines.[1] Although Defendant Watson's actions did not permanently injure Mr. Mackey, depriving him of proper eyesight did jeopardize his health and safety, particularly in a prison setting. *See Cont'l Trend Res., Inc.*, 101 F.3d at 638. Further, Defendant Watson's First Amendment retaliation constitutes irreparable injury. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). With respect to Defendant Prieto, the Court agrees with Plaintiff that "the harm was to Mr. Mackey's rights themselves, and to any future interest he may have that depends on his disciplinary record." (Doc. # 298 at 7.) Moreover, the Court regards the injury to Mr.

---

[1] Mr. Mackey testified at trial that one migraine lasted 24 hours and was the worst migraine he has ever experienced.

Mackey that "was ostensibly emotional or physiological . . . as more reprehensible than strictly economic harm, if not equivalent to physical harm." *Tate v. Dragovich*, No. CIV.A. 96-4495, 2003 WL 21978141, at *8 (E.D. Pa. Aug. 14, 2003). Additionally, Mr. Mackey lost his paid position as an Offender Care Aide, which Mr. Mackey enjoyed and excelled at, following Defendants' actions.

Second, the misconduct of both Defendants Watson and Prieto would be considered unlawful in all states because it violated the U.S. Constitution.

Third, Defendants' misconduct was intentional. In holding Defendant Watson liable for First Amendment retaliation, the jury found that she "intentionally confiscated Mr. Mackey's personal property or filed an incident report against him." (Doc. ## 277, 279.) Defendant Watson confiscated Mr. Mackey's glasses in violation of Department of Corrections regulations that require a corrections officer to obtain approval from medical personnel before confiscating a prisoner's prescription healthcare items. Although the jury instructions did not specifically address the intentionality of Defendant Prieto's conduct, Defendant Prieto's testimony as to her familiarity with due process requirements and the importance of witness testimony indicates that her actions were intentional.

Lastly, as a prisoner, Mr. Mackey presented a 'vulnerable target' to Defendants Prieto and Watson, who were both senior prison staff members. *See Tate*, 2003 WL 21978141, at *8. Notably, Defendant Watson's actions rendered Mr. Mackey even more vulnerable, as she deprived him, for six weeks, of his prescription eyeglasses in a

prison setting. In sum, the Court finds that the evidence showed that Defendants' misconduct was reprehensible.

b.    *Relationship between harm and punitive damages award*

Defendants put great emphasis on the large ratio of punitive to nominal damages in this case and cite to *State Farm*, 538 U.S. 408, for the proposition that Mr. Mackey should receive no more than $18 in punitive damages (applying a single-digit multiplier to his nominal damages). Although the Supreme Court has indicated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," a higher ratio "may comport with due process where 'a particularly egregious act has resulted in only a small amount of economic damages.'" *State Farm*, 538 U.S. at 425 (quoting *Gore,* 517 U.S. at 582). Such is the case here.

Defendants' focus on the proportionality of the nominal to punitive damages awarded in this case is misplaced because the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), prohibited Mr. Mackey from receiving compensatory damages without a finding of physical injury. *Jordanoff v. Coffey*, CIV-15-939-R, slip op. at 3 (W.D. Okla. July 13, 2018). The PLRA does not, however, bar Plaintiff's recovery of nominal or punitive damages, even in the absence of a showing of physical injury. *See Searles*, 251 F.3d at 879, 880–81 ("[A]s a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury."); *McDaniels v. McKinna*, 96 F. App'x 575, 581 (10th Cir. 2004) (noting that "*Searles* did not foreclose prisoners' claims for First Amendment violations that only

sought nominal damages or punitive damages."). Accordingly, "[i]n cases like this where there are little to no compensatory damages to compare, courts have consistently declined to apply the Supreme Court's 'ratio to the actual harm' factor for assessing the excessiveness of punitive damages awards." *Jordanoff*, CIV-15-939-R, slip op. at 3 (first citing *State Farm*, 538 U.S. at 425; then citing *Gore*, 517 U.S. at 580–81). Indeed, courts have upheld large punitive damages awards in Section 1983 cases where the PLRA applies, even where plaintiffs were awarded nominal damages against individual defendants.[2] Constitutional violations such as the ones that took place in this case fall within the category of exceptional cases that may constitutionally exceed the single-digit multiplier of punitive damages. The Court rejects Defendants' argument to the contrary.

### c.   Comparison to civil penalties owed in similar cases

The Court is unable to locate any statutory penalties for due process violations or retaliation analogous to Mr. Mackey's claims in this case. Therefore, this guidepost "has no application here, as neither party could direct the lower court to civil or criminal penalties" that Defendants could face for their conduct. *Haynes v. Stephenson*, 588 F.3d 1152, 1159 (8th Cir. 2009) (citing *Asa–Brandt, Inc. v. ADM Investor Servs.,*

---

[2] *See, e.g.*, *Haynes v. Stephenson*, 588 F.3d 1152, 1158 (8th Cir. 2009) (citing *JCB, Inc. v. Union Planters Bank, NA,* 539 F.3d 862, 877 (8th Cir. 2008) (awarding more than $100,000 in punitive damages on a trespass claim where the compensatory damages award was $1)) (upholding $2,500 to $1 punitive to nominal damages award as constitutional and noting the "the district court did not err in concluding that the high ratio of punitive to compensatory damages awarded did not offend due process" because the defendant's actions resulted in only nominal compensatory damages); *Tate*, 2003 WL 21978141, at *9 (upholding $10,000 punitive damages award where PLRA barred compensatory damages for Plaintiff on First Amendment retaliation claim); *Jordanoff*, CIV-15-939-R, slip op. at 3–5 (upholding punitive damages award of $35,000 against individual defendant where PLRA limited Plaintiff to nominal damages); *cf. Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 817–20 (E.D. Mich. 2006) (upholding punitive damages award of $200,000 against individual defendant for retaliatory transfer).

*Inc.,* 344 F.3d 738, 747 n. 16 (8th Cir. 2003)). However, when examining this third factor, the Court may look to the amount of punitive damages necessary to deter similar misconduct in the future. *Tate*, 2003 WL 21978141, at *10 (citing *Gore,* 517 U.S. at 584–85).

It is manifest from the record and the Motion that the punitive damages awarded in this case are a reasonably necessary deterrent against future constitutional violations. Although Defendants each had more than 10 years of experience as corrections officers (12 years for Defendant Watson and 19 years for Defendant Prieto), they violated Mr. Mackey's constitutional rights. Both Defendants are still employed by the Colorado Department of Corrections ("CDOC"). Defendants were not reprimanded or disciplined in any way by CDOC for the misconduct underlying this case. Importantly, the same lack of remorse Defendants demonstrated on the witness stand is echoed in the instant Motion; Defendants proceed to minimize the harms they inflicted on Mr. Mackey and have yet to acknowledge the severity of their misconduct. *See, e.g.*, (Doc. # 286 at 11–12) (characterizing this case as "involv[ing] Plaintiff's lack of access to his eyeglasses for a six-week period," likening Defendant Watson's intentional deprivation of Plaintiff's prescription eyewear to theft of property between $300 and $750, and commenting that Defendants' theft analogy is not perfect because Plaintiff's glasses were returned to him).

The Court finds, in light of the evidence presented at trial and the factors discussed above, that the punitive damages awarded in this case were not motivated by passion, prejudice, or bias, and are not so excessive as to shock the judicial

conscience. *Mason*, 948 F.2d at 1560. To remit the punitive damages award to $18, as Defendants urge, "would encourage bad behavior by prisoner officials and would discourage settlement in litigation because it would tell prison officials that they could violate prisoners' rights on the cheap." *Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 819 (E.D. Mich. 2006). Because the Court firmly believes that the jury decision in this case is supported by the evidence, it declines to interfere with that verdict and, in effect, send such a message to prison officials.

## B.     DEFENDANTS' MOTION TO STAY

Defendants move the Court to stay the execution of judgment during the pendency of this Court's consideration of the instant Motions and any subsequent appeals either by extending Fed. R. Civ. P. 62(a)'s automatic stay or by entering a Fed. R. Civ. P. 62(b) stay. In support of their request, Defendants assert that they have made a "substantially founded challenge to the award of punitive damages against them" and that "the near certainty such an award of punitive damages will not withstand appellate review" justifies the imposition of a stay. (Doc. # 287 at 2.) Defendants posit that they "should not be required to pay the judgment, or make any arrangements for any security related to the judgment, until issues surrounding (without limitation) the permissibility of a more than 10:1 ratio of actual damages are fully resolved." (*Id.* at 6.)

The Court addressed herein the "permissibility of a more than 10:1 ratio of actual damages" in general and found that a higher ratio is reasonable in the instant case because of the PLRA's limitation on Mr. Mackey's ability to receive compensatory damages. Therefore, the Court rejects Defendants' premise that a stay is justified in the

instant case because it is nearly certain the punitive damages award will not withstand appellate review. To the extent Defendants move the Court to stay this action pending any appeals, the Motion is denied for lack of good cause shown. *See Landis v. North American Co.,* 299 U.S. 248, 254 (1936) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."). To the extent Defendants move the Court for a stay pending the Court's resolution of the instant Motions, the Motion is denied as moot.

## C.   PLAINTIFF'S MOTION FOR ATTORNEY FEES

Mr. Mackey moves the Court to award his counsel $122,661.80 in attorneys' fees. Defendants have stipulated to counsel's hourly rate but vehemently object to the hours billed, arguing that counsel failed to exercise billing judgment; overbilled for travel time, administrative tasks, and paralegal time; and that the fee award should be reduced by 20% for vague entries and block billing. The Court agrees with Defendants in part and reduces the fee award to $100,820.03.

### 1.   Applicable Law

Under 42 U.S.C. § 1988(b), "[i]n any action or proceeding to enforce a provision of section. . . 1983, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Under § 1988, a fee claimant "must prove two elements: (1) that the claimant was the prevailing party in the proceeding; and (2) that the claimant's fee request is reasonable." *Arend v. Paez,* C.A. No. 12-cv- 01270-DDD-SKC, 2019 WL 2726231, at *1, (D. Colo. July 1, 2019) (quoting *Robinson v. City of Edmond,* 160 F.3d 1275, 1280 (10th Cir. 1998)).

When evaluating a motion for attorneys' fees, the Court follows the three-step process set forth in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). The first step in determining a fee award is to determine the number of hours reasonably spent by counsel for the prevailing party. *Malloy v. Monahan*, 73 F.3d 1012, 1017 (10th Cir. 1996); *Ramos*, 713 F.2d at 553. The factors considered in a reasonableness determination include: (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to a specific task. *Rocky Mountain Christian Church v. Bd. of Cty. Comm'rs of Boulder Cty.*, No. 06-cv-00554, 2010 WL 3703224, at *2–3 (D. Colo. Sept. 13, 2010). Time spent by counsel that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433.

Once the Court has determined the number of hours reasonably spent, it must then determine a reasonable hourly rate of compensation. *Ramos*, 713 F.2d at 555. "A reasonable rate is the prevailing market rate in the relevant community." *Malloy*, 73 F.3d at 1018 (citing *Blum v. Stenson*, 465 U.S. 885, 897 (1984)). The party seeking the

award has the burden of persuading the court that the hours expended, and the hourly rate, are reasonable. *Id*. The third step consists of multiplying the reasonable hourly rate by the number of hours reasonably expended to determine the lodestar amount. *Hensley*, 461 U.S. at 433.

2.   <u>Analysis</u>

In the instant case, it is undisputed that Mr. Mackey is a prevailing party for the purposes of 42 U.S.C. § 1988(b) because Mr. Mackey prevailed on both of his claims at trial and the jury awarded him $180,000 in punitive damages. The parties have stipulated to the hourly rates sought by Plaintiff's legal team—i.e., $222 per hour for Attorneys Homiak and Scarpato and $100 per hour for paralegal Brianna S. Apodaca and trial support manager Robert G. Mason. The Court finds that these hourly rates are reasonable, *Ramos*, 713 F.2d at 555, and comply with the limitations established by the PLRA.[3] Accordingly, the only element of Plaintiff's fee award that is at issue is the reasonableness of the hours expended.

a.   *Reasonableness of the hours expended*

The Court has reviewed the fee application and supporting documentation and finds that the number of hours billed by Plaintiff's counsel is unreasonable. Counsel is expected to exercise billing judgment in applying for attorneys' fees.[4] Put differently,

---

[3] The Court notes that the agreed-upon hourly rate for Attorneys Homiak and Scarpato is the maximum rate currently allowable under the PLRA. *See* 42 U.S.C. § 1997e(d)(3) ("No award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18, United States Code, for payment of court-appointed counsel.").

[4] The Court notes that attorneys often reduce the fee award sought by 10 to 20% to close the gap between actual hours and billable hours. *See, e.g* ., *Deasy v. Optimal Home Care, Inc.*, No.

counsel should determine what subset of the actual hours spent on a case were reasonably expended in the litigation and is, therefore, billable:

> Compiling raw totals spent, however, does not complete the inquiry. It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Copeland v. Marshall,* 641 F.2d at 891 (emphasis in original). Although Plaintiff's counsel claims to have exercised billing judgment by not seeking reimbursement for additional **paralegal** time, counsel seeks to recover fees for all time spent by Attorneys Homiak and Scarpato on this case. The Court rejects counsel's position that the actual hours spent on this case were all reasonably expended in the litigation. *Ramos*, 713 F.2d at 553 (noting courts "must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation").

From review of the fee application, it is clear to the Court that Plaintiff's counsel has not carried its burden to "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (emphasis added). For example, the fee application seeks reimbursement for administrative or clerical work performed by Attorney Scarpato and Ms. Apodaca. Plaintiff conceded in his reply that $4,050 should be deducted from the fee award for

---

17-CV-00287-MSK-CBS, 2019 WL 2521676, at *3 (D. Colo. June 19, 2019), *appeal dismissed,* No. 19-1258, 2019 WL 7596276 (10th Cir. Aug. 22, 2019) (noting the party moving for attorneys' fees reduced their billings by 20% to account for any unnecessary overlap or excess). Such a reduction was not made by Plaintiff's counsel in this case.

clerical work performed by Ms. Apodaca, and the Court agrees.[5] Further, Plaintiff billed all transportation time at full cost.[6] The Court finds that the vast majority of Plaintiff's travel time was improperly billed at full rate and should have been billed at half rate. *See Smith v. Freeman,* 921 F.2d 1120, 1122 (10th Cir. 1990) (recognizing compensability of productive travel time and trial court discretion to apply a reduced hourly rate to travel time that is otherwise unproductive).

Lastly, to the extent Plaintiff argues that his attorneys took longer to complete tasks because they are inexperienced litigators, the Court finds that billing Defendants (and Mr. Mackey, pursuant to the PLRA)[7] for the entirety of counsel's learning curve is inappropriate. Plaintiff's counsel is billing at the maximum rate allowable under the PLRA. Therefore, attorneys with decades of trial experience would bill at the same rate for far fewer hours of work. The Court finds that the additional length of time Plaintiff's counsel required to complete tasks due to inexperience should be absorbed into their

---

[5] (Doc. # 306 at 9–10.) A reduction of $4,050 yields a fee request of $118,611.80.

[6] Even if the Court accepts counsel's representation that the round-trip travel of Attorneys Homiak and Scarpato to the depositions of Defendant Watson and Christopher Wood was productively spent discussing "trial preparation, trial strategy, and discovery strategy" and should be billed at full rate, this only accounts for 12 total hours of travel time billed. The same representation has not been made as to the remaining almost 50 hours of travel time billed between Attorneys Homiak and Scarpato at full billing rate. *See, e.g.,* (Doc. # 285-7 at 5–7) ("Travel to Fremont Correctional Facility and gain clearance to facility" on 5/14/2019 – 3.5 hours, "Return travel from Fremont Correctional Facility" on 5/14/2019 – 2.1 hours, "Travel to Fremont Correctional Facility for client visit" on 5/28/2019 – 2.3 hours, "Return travel from Fremont Correctional Facility" on 5/28/2019 – 2.3 hours, "Travel to Pueblo for Ms. S. Prieto's deposition" on 6/26/2019 – 2.9 hours, "Travel from Pueblo deposition location back to Denver" on 6/26/2019 – 1.6 hours).

[7] As discussed in more detail below, the PLRA requires Mr. Mackey to contribute 25% of his judgment to Plaintiff's attorneys' fees.

law firm's overhead and not billed to their adversary. *Cf. Ramos*, 713 F.2d at 554 ("time spent reading background cases, civil rights reporters, and other materials designed to familiarize the attorney with this area of the law . . . would be absorbed in a private firm's general overhead and . . . would not [be billed to] a client.").

Overall, "because there are so many billing entries that would require minute adjustments, a wholesale reduction in the fees claimed by Mr. [Mackey] is a more efficient and effective way to capture the amount of time unreasonably billed to due overlap or excess." *Deasy v. Optimal Home Care, Inc.*, No. 17-CV-00287-MSK-CBS, 2019 WL 2521676, at *3 (D. Colo. June 19, 2019), *appeal dismissed,* No. 19-1258, 2019 WL 7596276 (10th Cir. Aug. 22, 2019). The Court finds that a 15% reduction in the fee application would address the deficiencies identified and make the hours sought reasonable.[8] Accordingly, Plaintiff's fee request is reduced from $118,611.80 to $100,820.03.

Defendants argue that vague time entries and block billing each warrant 10% reduction in attorneys' fees but neglect to identify any time entries that are vague or block billed. Although courts are obligated to exclude hours not reasonably expended

_____

[8] The Court will not address the individual hours spent on each litigation task by Attorneys Scarpato and Homiak in recognition that they obtained excellent results for their client at trial and those results flowed from counsel's preparation. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (citations omitted) (noting "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"); *Santacruz v. Standley & Assocs., LLC*, No. 10-CV-00623-CMA-CBS, 2011 WL 3366428, at *1 (D. Colo. Aug. 4, 2011) ("The Court also takes into consideration plaintiff's high degree of success in this case, which underscores the reasonableness of plaintiff's counsel's time expended on jury instructions."); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

from the fee award, courts need not "identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's fees should not result in a second major litigation.'" *Malloy*, 73 F.3d at 1018 (quoting *Hensley*, 461 U.S. at 437); *see Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection."). The Court concludes that a 15% reduction in the fee award is sufficient to make the hours sought reasonable.

### b.    *Prison Litigation Reform Act*

The PLRA limits the recovery of Plaintiff's counsel to 150% of the judgment and requires that 25% of the judgment obtained by Plaintiff be allocated toward the fee award. 42 U.S.C. § 1997e(d)(2);[9] *see Murphy v. Smith,* 138 S. Ct. 784, 790 (2018) ("In cases governed by § 1997e(d), we hold that district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of attorney's fees."); *Poore v. Glanz*, No. 11-CV-797-JED-PJC, 2019 WL 1425884, at *7 (N.D. Okla. Mar. 30, 2019), *aff'd,* 791 F. App'x 780 (10th Cir. 2020) ("Under *Murphy*, 25% of the judgment . . . must be applied pursuant to § 1997e(d) to satisfy fees, and the defendants are liable only for the remainder . . . of the total capped fees.").

As the Court has upheld Mr. Mackey's judgment of $180,002.00, the fee award of $100,820.03 falls below the cap set by the PLRA. Pursuant to the Supreme Court's

---

[9] 42 U.S.C. § 1997e(d)(2) provides that: "Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant."

interpretation of § 1997e(d) in *Murphy*, Plaintiff shall contribute 25% of his judgment—$45,000.50—to satisfy the fee award. Defendants shall pay the remaining $55,819.53 of the fee award.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Motion for Remittitur or, in the Alternative, for New Trial on Punitive Damages (Doc. # 286) is DENIED;

- Defendants' Motion for Extension of Stay of Execution of Judgment Pending Resolution of their Motion for Remittitur and Any Appeal (Doc. # 287) is DENIED; and

- Plaintiff Waldo Mackey's Partially Opposed Motion for Attorney Fees (Doc. # 285) is GRANTED IN PART and DENIED IN PART as follows:

  o the Motion is granted as to a fee award of $100,820.03;

  o 25% of Plaintiff's judgment funds ($45,000.50) shall be contributed to satisfy the fee award;

  o the remaining $55,819.53 of the fee award shall be paid by Defendants, for which Defendants are jointly and severally liable;

  o the Motion is denied to the extent it requests a greater fee award.

DATED:  August 14, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge